Following a successful resolution of my client's securities law claim against an issuer, we appealed the district court's referral to arbitration of claims my client had against an individual, Matthew Mattern. Mr. Mattern was not a party to my client's arbitration agreement with the issuer, Internet Ventures, Inc. I want to address three areas today. First of all, I briefly want to address the procedural sufficiency of the motion to vacate that we filed with the district court. Then I want to address whether the review by this court is de novo or is based on the manifest disregard standard. And then, time permitting, I'll briefly address the substantive contractual issue, but I think that's fully set forth in the brief. On the procedural sufficiency of the motion to vacate, we filed a timely motion to vacate with the court, and in six pages we laid out, we called out all of the predicate facts that supported that motion to vacate. We also pointed out, and this is at excerpts of record 95, our excerpts of the record, that the issue we intended to appeal had been fully briefed before the district court already. Therefore, we did not submit additional briefing. It was and remains our position that the district court had decided the issue of the arbitrability of the dispute with Mr. Mattern, and Mr. Mattern's standing to rely on the arbitration contract. And there were aspects, frankly, of the arbitrator's final award that we wanted confirmed. But we did timely file a protective motion to vacate, and we made crystal clear the issues that we intended to appeal, that being Mr. Mattern's recovery and the referral to arbitration of the claims against him. What law applies? Excuse me? What law applies? Well, the law that applies, Your Honor, into the perception of the agreement is State law. It's California law, but subject to the Supreme Court's having made clear that what you have to apply is the general law of contract of that State. And if a State has made special rules or has applied special standards to arbitration contracts, then those special standards can't be applied. You're applying the general contract law of the State of California. How does that spin out here? Well, how it spins out here, Your Honor, is I think the — well, for several reasons, I think that the district court's decision is the decision that's reviewed, and it's reviewed de novo. First of all, I think it's reviewed de novo. The question is what law applies. Well, it's California law, and — But California law applies unless there's — if it's general contract law. Yes. Ultimately here, we're dealing with the question of whether agents can partake of their principal's agreement to arbitrate. Is that arbitration-specific or not arbitration-specific? Well — Ultimately, it doesn't matter, because it's in California and Federal law, and that question is the same. Yeah. I think that — and here I know that Mr. Matron relies heavily on Perry v. Thomas, the Dreyer case, and the Berman v. Dean-Ritter case. I think under California law, you reach the result that we want to reach, because I think all of those cases can be understood as cases in which a claimant was actually suing on the contract. And I think Perry v. Thomas makes that very clear. The Court makes it clear in its decision on remand that it was a contract claim. And Dreyer, that that specifically were not, that there was a claim similar to the one here? It was a fraud claim, a tort claim? My recollection is that the — the Court in Dreyer held those claims were essential claims in contract. As a matter of fact, my recollection is the Court observed in passing that, in fact, perhaps what the agent should be doing is to move to dismiss the claims entirely, because if there was a disclosed principal, the claims shouldn't lie against the agent at all. I do think that those cases can be understood on that basis, that they were claims on the contract. To the extent that they were not claims on the contract and there wasn't a third-party beneficiary rationale, then I do think that the obligation of this Court is to heed the directive of the Supreme Court that you have to apply general contract law. And if there's been an historical pattern in the California decisions to treat arbitration contracts differently — Sotomayor, I don't want to say that I have problems with this law, I don't understand it, but it appears to me that both the California cases and the 9th Circuit cases are quite solid on this notion that you can — that agents essentially acting within the scope of their employment can take advantage of these arbitration contracts. Well, and I think that the language is troublesome, and I acknowledge that in the court below, that the language is not clear in the area of law, appears to be confusing. I think there are two possible explanations. One is you have a lot of early decisions back when the law was not so clear on the extent to which arbitration was to be favored. I think more recent Supreme Court decisions have made it clear that in terms of deciding whether a party has bound itself to arbitrate or can invoke an arbitration agreement, you are looking at general contract principles, and you cannot have special principles that are applicable to arbitration contracts. You go back to Dyer and what you said about Dyer. There was a footnote. The trial court was correct in its ruling that all of the claims raised in the complaint are governed by the contract, notwithstanding the fact that many of the causes of action are framed in tort. A long line of California and federal cases holds that claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship between the parties. And here we have a — and this was all in the context directly of the agents being able to sue. So what's the difference? Well, and what I'm recalling is the language in the body of opinion itself that said if you're being sued. I know. I understand. I understand, Your Honor. I think, again, if I — as I had argued below, the cases either have to be rationalized as true agency cases or third-party beneficiary cases, either that or it's the duty of this Court, heeding the directives of the U.S. Supreme Court, to say that if and to the extent that California has applied different principles to arbitration contracts, not the agency principles that applies. But then we go to Letizia and that line of cases and we're in the same place. But Letizia, if you look at the language of that arbitration clause in Letizia, the arbitration clause in Letizia was broad enough to create third-party beneficiary rights. There you could — the employees could clearly claim third-party beneficiary status because the language of the arbitration clause said any dispute arising under this agreement is subject to arbitration, and disputes with employees were foreseeable. It was unlike the language in this case where it says disputes between the parties are arbitrable and no third-party rights are created by this contract. I think Letizia and a number of other cases can be decided on the basis that the contract language was broad enough to create third-party beneficiary rights, and that's what is being relied upon. Go ahead, Justice Kennedy. Yes. I just had a question on the no third parties. The one party of the contract was the corporate entity and the attorney was acting on behalf of that corporate entity. Is that correct? He claims to have been acting on behalf of the corporate entity, Your Honor. Our claims against him were securities law claims, fraud claims, and registration violation claims. But he does claim to have been acting on behalf of the corporate entity. Okay. For the purposes of the no third-party clause, where you have a corporate entity that cannot act except through other people, wouldn't the party be the entity acting through its duly constituted representatives? Your Honor, I don't think that that's what the Ninth Circuit held in the Britton cases. I think in the Britton cases, the Ninth Circuit allowed us how you may have employees and agents acting on behalf of a corporation, and yet if the claims are not based on the corporation's contract or if there's not a third-party beneficiary or other rationale that applies, you're not bound to arbitrate claims against those individuals, nor can they assert arbitration rights against you. But here, although it's not a contract claim, it involves interpretation of the contract. It does involve interpretation of the contract, but, Your Honor, if my clients could not make clear through the language of this contract that they were prepared to arbitrate claims with the issuer, the corporation, but they wanted to preserve their right to litigate claims against other parties, including promoters, agents, and employees, if they couldn't make that clear through this language, then it would be impossible for a party to. And that is an extremely true. I mean, it is true that there was this background law and that all they had to say is the agents are not covered by this law. Well, they said only the parties' disputes between the parties are subject to arbitration and the contract identified the parties, the buyer and the seller. And then there was this no third-party rights provision that said no person other than the parties to this contract have any rights or any obligations, nor can it be asserted that they have rights or obligations by virtue of this contract. So I did want to reserve my time. I hope I've answered that question. We'll give you a minute or so. Thank you for your argument. Mr. Wiener? Yes, thank you, Your Honor. Is that your luggage okay? Yes, thank you. I apologize to the Court. Don't worry. Again, I believe I have ten minutes, so I'll try to be brief. The – I believe the – under the drier line of cases in California and Perry v. Thomas in the Supreme Court, the – these claims definitely were arbitrable, whether or not the issue was properly preserved procedurally. And I think the argument is being made that, although I don't think it was fully briefed, that the – this rule of applying the provisions of the contract to disputes involving agents is a rule that applies in California, is a rule that applies solely to arbitration clauses. However, that's simply not true, because the – Yeah, that is true. Isn't it really true? Because ordinarily, if you have a contract to buy widgets between X and Y and some agent of X comes in and says, I want to buy the widgets for myself, he can't do it. Well, the – Or if he screws up and somebody – if they don't get the widgets and they go sue the agent, they can't do that either. Well, it's correct that the – generally, the third party can't sue directly on the contract. However, I believe the California court and panels of this circuit have held that the choice of law clause in – I've done that by analogy to the arbitration cases. But outside of those two arcane areas, isn't this a complete anomaly with regard to all our general predispositions about – about artificial entities and how they're separate from their – the individuals that comprise them and how – I mean, it is a very odd rule and one that does seem to be pretty much arbitration-specific. Well, I guess I really have three answers to that. Like, there were the three principal answers, Your Honor. The – I think the first is that it's not a rule that's specific to arbitration. For example, as the record in this case shows, the same principle was applied to invoke the California choice of law based on opinions of the California courts and of this Court. Let's get beyond choice of law. Anything else? Is there any other circumstance in which it would be? Well, in this case, it was applied to import the attorney's fee provision. So it's not – But it's not a general rule of agency law. The general rule of agency law is the opposite. Right. Well, I think the second argument would be that even if that's an anomalous result, it's the result which the Supreme Court of the United States in Perry v. Thomas remanded to California. Right. But the Supreme Court specifically held this is an issue of California law. No, actually, they didn't even do that. They just said they remanded it to see if it was an issue of California law. Well, again, I – there may be a dispute as to the meaning of Perry v. Thomas in the subsequent case in the California court of appeal. However, I might pass to my third argument, which is that based on current law, which has developed somewhat since this issue was originally briefed, there is perhaps a stronger and more logical argument, which was raised by both parties, that the real grounds for applying the arbitration clause is equitable estoppel, that where all the issues arise out of the interpretation of the agreement or involve interpretation of the agreement in the documents, that the parties who signed the arbitration agreement are stopped to go off and then try to file a suit just against two officers and bypass the corporation – the agreed-to arbitration provision and force a judicial ruling on the court. Why are you talking about B? Did you raise this before? Well, it was raised in the – actually, the appellants raised the argument. And it's discussed as – primarily as point – Roman 7 of our main brief. And I was simply going to call the court's attention to the case which just came out in the California advance sheet, which I think clarifies both how the federal and California courts would approach that issue. And that case is Metalclad Corporation v. Ventana Environmental Organizational Partnership, which just came out in the advance sheet as 109 Calab 4th, 1705, 1 Cal 4th, 1705. It was filed on June 30, 2003. With the permission of the court, I would provide – I'm prepared to provide copies to counsel and the panel. See the clerk after argument and fill out on it? I'll provide it to counsel immediately. I assume that's proper. But there's a sheet you can fill out after argument with the citation. So I think the – And where is this argument in your brief? It's – well, it's raised in our brief primarily as point 8 – excuse me, point 7, Roman point 7 at 54 through 58. And essentially we were responding to an argument which had been made, you know, actually by appellants. So both parties have briefed this issue, even though there is subsequent law that makes the argument much stronger for the appellate. The – well, I guess another point is I – which I believe strongly supports affirmance is that in this case, the three appellants all specifically agreed to have questions of arbitrability determined by the arbitrator and not by the court. Wait a minute. People who aren't parties can't agree to anything. They aren't parties. Well, I guess I have two answers to that. I think that's – in this case, the three parties who are objecting to having the arbitrator determine the issue all clearly did sign the agreement and give the arbitrator that power. Not on their own behalf, though. That seems to me your weakest argument, the notion that this was supposed to be decided by the arbitrator. If an issue of whether or not these people are bound by the agreement and they're saying they're outside it entirely, isn't that a classic thing the court has to decide no matter what? Your claim is we're not just part of this agreement. We're not bound to anything, Mr. Gray. Well, actually, Your Honor, there's no claim that Mr. Jorgens, Mr. Schmidt, or Mr. Olbach are not bound by the agreement. They signed it. The only question is what they were bound to arbitrate. There may be – there might be a different case raised, say, if Mr. Mattern had said, well, I didn't sign the agreement, I'm not bound by it. Well, Mr. Mattern is who we have here, only Mr. Mattern, right? Isn't Mr. Mattern the only person who was still in the case? Well, yes, but he is the one who argued in favor of arbitrability. So this case doesn't present the issue of whether a person who has not validly signed a broad arbitration clause and given the arbitrators the broadest possible power under first options could be bound at all by the clause, because all three people who were saying they aren't bound by the arbitrators' determination undoubtedly did sign the agreement. So given that the Federal court does not decide hypothetical issues, I would suggest that that's a question that might have to be faced by a future panel. Okay. Judge Thompson, any questions? No. Again, I'd like to hear any further questions from the panel for issues that need to be explored. I don't think we have any that could be answered in seven seconds. All right. Thank you. Thank you, Your Honor. And I will, as the Court prefers to not receive the split opinion, I will present it on the form, which the clerk will now give to the committee. Thank you very much. Thank you. You may want to wait for the rebuttal. Thank you, Your Honor. And I'll give just three brief points. First of all, as it relates to counsel's argument under First Options, First Options says you refer the issue of arbitrability to the arbitrator only if there is clear and unmistakable evidence that that's what the parties intended. He points to the reference to issues of arbitrability being decided by arbitrators in this case, but it's in a provision that talks about disputes among the parties. So clearly, I would agree, as it relates to disputes among the parties, the agreement is clear. Arbitrability issues go to the arbitrator. It is hardly clear that disputes with nonparties go to the arbitrator. In fact, given the no third-party rights claim, it's certainly the agreement suggests otherwise. The Court's questions about other areas of California law that treat agency differently. We specifically have pointed out two cases that deal with agents' abilities to invoke attorney's fee provisions in their principal's contracts. And this is another area of law that deals with a parallel issue. Reynolds Metals v. Alperson and Real Property Services. They're at pages 27, 28 of our brief. And they do treat the issue differently under general contract principles. And finally, Judge Thompson, in response to your question about whether all the claims grow out of the contract, I would suggest that if you look at the complaint that is a part of the record, the complaint that was filed against Mr. Mather and Mr. Jenke, had there been no stock purchase agreement, exactly the same claims and causes of actions could have, would have been asserted, because my client's claims grew out of State securities law, Federal securities law, and common law obligations, and in no case were we relying upon an obligation that was created by that contract. Thank you. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision.
judges: Thompson, Hawkins, Berzon